<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____

                                   :

NORMAN GOODMAN, et al.,         :

                                   :

       Plaintiffs,          :

                                   :         Civil Action No. 04-03869 (JAG)

         v.             :

                                   :         **OPINION**

SIMON GOODMAN, et al.,        :

                                   :

       Defendants.         :

_____:

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion filed by plaintiffs, Norman Goodman,
Craig Goodman, Jeffrey Goodman and Irwin Tartus (collectively "Plaintiffs"), seeking entry of
default judgment against defendants, Irving Goodman, Simon Goodman, and Goodman Brothers
Steel Drum Company, Inc. (collectively, "Defendants"), pursuant to FED. R. CIV. P. 55(b).  For
the reasons set forth below, this motion will be denied.

**I.  FACTS**

Plaintiffs, Norman Goodman and Irwin Tartus, owned and operated National Drum and
Barrel Corp. ("National Drum").  (Am. Compl. ¶ 12.)  On January 1, 1993, Norman Goodman
and Irwin Tartus sold National Drum's assets and goodwill to Goodman Brothers Steel Drum
Company, Inc. ("Goodman Brothers");  (id. ¶ 13) but retained ownership of the 35 Beadel Street,
Brooklyn, New York property (the "Beadel Street Property").  (Id.)   Plaintiffs leased the Beadel

Street Property to Goodman Brothers.  (Id.)  During this period, Goodman Brothers was owned and operated by Simon Goodman, Irving Goodman, and Ivan Mortman.  (Id. ¶ 14.)

Subject to the terms and conditions of a promissory note, Goodman Brothers owed Norman Goodman and Irwin Tartus $500,000, over a period of seven years, for the assets and goodwill of National Drum.  (Id. ¶¶ 15, 16.)  As part of the National Drum sale, Craig Goodman and Jeffrey Goodman were given employment contracts with Goodman Brothers which granted them a right of first refusal with respect to subsequent purchases of any interest in Goodman Brothers.  (Id. ¶ 18.)  Plaintiffs made demand for payment, pursuant to the terms and conditions of the promissory note.  (Id. ¶¶ 20-22.)  Plaintiffs' demand has been ignored, and $170,000 owed to Norman Goodman and Irwin Tartus on the promissory note remains unpaid.  (Id.)

Goodman Brothers filed for Chapter 11 bankruptcy sometime after purchasing National Drum's assets and goodwill.   (Id. ¶ 28.)  At the time of the bankruptcy filing, Norman Goodman filed as a creditor for $240,000, as owed from the sale of National Drum, and $20,000 for a personal loan.  (Id.)  The equipment and staff of Goodman Brothers, along with the goodwill and assets of National Drum, were consolidated into Goodman Containers.  (Id. ¶ 38.)  Plaintiffs allege that Goodman Brothers illegally transferred its assets to defendant Tri-State Steel Drum Company to form Goodman Containers, L.L.C. ("Goodman Containers") in order to avoid paying Plaintiffs money owed to them under the promissory note. (Id. ¶ 33.)

After the transfer, Goodman Containers was acquired by Recycle East for $1.6 million, payable over five years; Plaintiffs allege that Goodman Containers was established to effectuate an eventual sale to Recycle East.  (Id. ¶¶  34, 35, 38.)  Plaintiffs allege that the sale of Goodman Containers to Recycle East allowed Defendants and Ivan Mortman to liquidate their interest in

Goodman Brothers while avoiding various obligations to Plaintiffs. (Id. ¶ 35.)

In 1997, Norman Goodman entered into a contract for sale of the Beadel Street Property. (Id. ¶ 23.)  During the closing of said sale, Norman Goodman discovered that Defendants and Ivan Mortman encumbered the Beadel Street Property with thirteen liens and judgments totaling over $180,000.  (Id.)  Defendants fraudulently encumbered the property without authorization and incurred these liens by fraudulent use of National Drum's Tax Identification Number.   (Id. ¶ 24.)  Norman Goodman and Irwin Tartus incurred approximately $60,000 in legal fees to clear title and complete the sale of the Beadel Street Property.   (Id. ¶ 26.)

In 2002, Goodman Brothers ceased making payments to Norman Goodman, claiming that there were no assets or ongoing business from the original entity, National Drum.  (Id. ¶ 39.) Defendants concealed the formation of Goodman Containers and that company's assumption of the Goodman Brothers' goodwill and assets without any official purchase or transfer of assets or ownership.  (Id. ¶ 42.)

## II. STANDARD OF REVIEW

A district court can enter a default judgment, pursuant to FED. R. CIV. P. 55(b)(2), which states:

> In all other cases, the party must apply for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing.  The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;

3

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

FED. R. CIV. P. 55(b)(2).  Further, discretion to enter default judgment is left primarily to the trial

court.  Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

"Default establishes the defaulting party's liability for the well-pleaded allegations of the

complaint."  United States v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v.

Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)).  Default does not

establish liability for the amount of damages claimed by the plaintiff.  Flaks v. Koegel, 504 F.2d

702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the

quantum of damages remains to be established by proof unless the amount is liquidated or

susceptible of mathematical computation.").  "The district court must instead conduct an inquiry

in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Secs.

(USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

The district court has considerable latitude in determining the amount of damages.  Jones

v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993).  In determining the amount, the district

court may conduct a hearing.  FED. R. CIV. P. 55(b)(2).  The court is not required to do so,

however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default

judgment."  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111

(2d Cir. 1997).  "It is familiar practice and an exercise of judicial power for a court upon default,

by taking evidence when necessary or by computation from facts of record, to fix the amount

which the plaintiff is lawfully entitled to recover and to give judgment accordingly."  Pope v.

United States, 323 U.S. 1, 65 (1944).

## III. JURISDICTION

Before a district court can enter default judgment against a party that has not filed responsive pleadings, the court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

### A.     Subject Matter Jurisdiction

This action involves a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim; therefore, this Court has jurisdiction under 18 U.S.C. § 1964(c). This Court also has supplemental jurisdiction over the state common law claims for breach of contract, breach of the covenant of good faith and fair dealing, material misrepresentation, breach of fiduciary duty, unjust enrichment, breach of contract/constructive discharge, intentional infliction of emotional distress, and negligent infliction of emotional distress.

### B.     Personal Jurisdiction

A federal court first looks to the forum state's long-arm statute to determine if personal jurisdiction is permitted over an out-of-state defendant. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004). In New Jersey, the long arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United States. Id. Therefore, in New Jersey, federal law defines the parameters of a court's in personam jurisdiction. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). Thus, this Court must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment. Miller Yacht Sales, 384 F.3d at 96.

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state

defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)).  It is the burden of the plaintiff to prove that the defendant has purposefully availed itself of the forum state.  Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

To prove that a defendant has purposefully availed itself of the forum state, a plaintiff may rely upon a defendant's specific contacts with the forum state.  The burden to produce actual evidence of the defendant's contacts with the forum state rests on the plaintiff.  Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  Personal jurisdiction pursuant to such contacts is known as specific jurisdiction.  Specific jurisdiction is invoked when a claim is related to or arises out of the defendant's contacts with the forum.  Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 416 (1984); Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984).

A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  What constitutes minimum contacts varies with the "quality and nature of defendant's activity."  Hanson, 357 U.S. at 253.  In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum, and the litigation."  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984).  There must be at least "a single deliberate contact" with the forum state that relates to the cause of action.  United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988).  The unilateral acts of the plaintiff,

however, will not amount to minimum contacts.  Helicopteros Nacionales de Colombia, 466 U.S. at 417; Hanson, 357 U.S. at 253.  Assuming minimum contacts have been established, a court must inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  Burger King Co., 471 U.S. at 476 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); see also Pennzoil Prod. Co. v. Colelli & Assoc. Inc., 149 F.3d 197, 201 (3d Cir. 1998).

For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state.  World-Wide Volkswagen Corp., 444 U.S. at 292 (1980).  To determine reasonableness, a court considers the following factors: a) the burden on the defendant; b) the forum state's interest in adjudicating the dispute; c) the plaintiff's interest in obtaining convenient and effective relief; d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and e) the shared interest of the several States in furthering substantive social policies.  Id.  Only in "rare cases [do the] minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities."  Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County, 480 U.S. 102, 116 (1987) (citing Burger King Co., 471 U.S. at 462).

If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic" contacts with the forum state.  Helicopteros Nacionales de Colombia, 466 U.S. at 416.  To establish general jurisdiction, the plaintiff "must show significantly more than mere minimum contacts" with the forum state.  Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819

F.2d 434, 437 (3d Cir. 1987). Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive." Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982) (citing Compagnie des Bauxites de Guinea v. Ins. Co. of North America, 651 F.2d 877, 890 (3d Cir. 1981) (Gibbons, J., dissenting)).

### III. ANALYSIS

In the instant case, Plaintiffs have not demonstrated that this Court has personal jurisdiction over Simon Goodman, Irving Goodman, and Goodman Brothers. Plaintiffs have offered no evidence demonstrating that Goodman Brothers has been properly served. Even if service was proper, Plaintiffs have failed to allege any facts showing that Goodman Brothers' minimum contacts with New Jersey are sufficient to establish personal jurisdiction.

"It is an elementary requirement that personal jurisdiction must be established in every case before a court has power to render any judgment." Lampe v. Xouth, Inc., 952 F.2d 697, 700 (3d Cir. 1992). A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. Id. at 701. "Indeed, if a defendant is not properly made a party to the action by effective service, he would not be bound by any judgment rendered." Id. "A default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void." Gold Kist, Inc. v. Laurinburg Oil Co., 756 F.2d 14, 19 (3d Cir. 1985).

FED. R. CIV. P. 4(h) governs the procedure for serving a corporation and requires service pursuant to the rule when a party is bringing an action against "a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name." FED. R. CIV. P. 4(h)(1). Service of a summons and complaint on a corporation in a

judicial district of the United States may be effected by serving the corporation "in a manner prescribed by Rule 4(e)(1) for serving an individual; or . . . by delivering a copy of the summons and complaint to an officer . . . and by also mailing a copy of each to the defendant." FED. R. CIV. P. 4(h)(1).

In the instant case, Plaintiffs have not offered any evidence that Goodman Brothers was served.  Plaintiffs did not serve the corporation by name, but instead served only defendants Irving Goodman and Simon Goodman in their individual capacities.  While Plaintiffs allege that Irving Goodman and Simon Goodman are the President and Secretary of Goodman Brothers (respectively) (Cert. of Peter W. Till at ¶ 11), there is no proof of service on Goodman Brothers, the corporate entity.

Although Plaintiffs have provided sufficient proof of service for Simon Goodman and Irving Goodman, (Proofs of Service, attached as Ex. B and Ex. C to Pls.' Req. for Entry of Default J.), Plaintiffs have failed to allege facts showing that either individual defendant has minimum contacts or a continuous and systematic relationship with the forum state.  Thus, this Court's personal jurisdiction over Simon Goodman and Irving Goodman has not been established.

As for Goodman Brothers, due to a lack of effective service and lack of evidence of minimum contacts by Goodman Brothers and the forum state, this Court's personal jurisdiction over Goodman Brothers has not been established.

## IV. CONCLUSION

For the reasons set forth above, this Court finds that Plaintiffs have failed to establish that this Court has personal jurisdiction over Irving Goodman, Simon Goodman, and Goodman

Brothers.  Therefore, this Court shall deny Plaintiffs' motion for default judgment (Docket No.

35), without prejudice.


Date: November 5, 2009

 S/Joseph A. Greenaway, Jr.      
JOSEPH A. GREENAWAY, JR., U.S.D.J.
