**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NORMAN GOODMAN, et al.,<br>Plaintiffs,<br>v.<br>SIMON GOODMAN, et al.,<br>Defendants. | Civil Action No. 04-03869 (JAG)<br>**OPINION** |

**GREENAWAY, JR., U.S.C.J.**[1]

This matter comes before this Court on the motion filed by plaintiffs, Norman Goodman, Craig Goodman, Jeffrey Goodman and Irwin Tartus (collectively "Plaintiffs"), seeking entry of default judgment against defendants, Irving Goodman, Simon Goodman, and Goodman Brothers Steel Drum Company, Inc. (collectively, "Defendants"), pursuant to FED. R. CIV. P. 55(b). For the reasons set forth below, this motion will be denied.

## I. FACTS

### A. Background

Plaintiffs, Norman Goodman and Irwin Tartus, owned and operated National Drum and Barrel Corp. ("National Drum"). (Am. Compl. ¶ 12.) On January 1, 1993, Norman Goodman and Irwin Tartus sold National Drum's assets and goodwill to Goodman Brothers Steel Drum

[1] Sitting by Designation.

Company, Inc. ("Goodman Brothers"); (id. ¶ 13) but retained ownership of the 35 Beadel Street, Brooklyn, New York property (the "Beadel Street Property"). (Id.) Plaintiffs leased the Beadel Street Property to Goodman Brothers. (Id.) During this period, Goodman Brothers was owned and operated by Simon Goodman, Irving Goodman, and Ivan Mortman. (Id. ¶ 14.)

Subject to the terms and conditions of a promissory note, Goodman Brothers owed Norman Goodman and Irwin Tartus $500,000, due over a period of seven years, for the assets and goodwill of National Drum. (Id. ¶¶ 15, 16.) As part of the National Drum sale, Craig Goodman and Jeffrey Goodman were given employment contracts with Goodman Brothers which granted them a right of first refusal with respect to subsequent purchases of any interest in Goodman Brothers. (Id. ¶ 18.) Plaintiffs made demand for payment, pursuant to the terms and conditions of the promissory note. (Id. ¶¶ 20-22.) Plaintiffs' demand has been ignored, and $170,000 owed to Norman Goodman and Irwin Tartus on the promissory note remains unpaid. (Id.)

Goodman Brothers filed for Chapter 11 bankruptcy sometime after purchasing National Drum's assets and goodwill.[2] (Id. ¶ 28.) At the time of the bankruptcy filing, Norman Goodman filed as a creditor for $240,000, as owed from the sale of National Drum, and $20,000 for a personal loan. (Id.) The equipment and staff of Goodman Brothers, along with the goodwill and assets of National Drum, were consolidated into Goodman Containers.[3] (Id. ¶ 38.) Plaintiffs allege that Goodman Brothers illegally transferred its assets to defendant Tri-State Steel Drum

---

[2] The company has since dissolved. (Cert. of Peter W. Till, Nov. 30, 2009 ("Till Cert.") ¶ 24.)

[3] It appears the dissolution, and creation of Goodman Containers, may have occurred around 2002. (Am. Compl. ¶¶ 5, 7.)

Company to form Goodman Containers, L.L.C. ("Goodman Containers") in order to avoid paying Plaintiffs money owed to them under the promissory note. (Id. ¶ 33.)

After the transfer, Goodman Containers was acquired by Recycle East for $1.6 million, payable over five years; Plaintiffs allege that Goodman Containers was established to effectuate an eventual sale to Recycle East. (Id. ¶¶ 34, 35, 38.) Plaintiffs allege that the sale of Goodman Containers to Recycle East allowed Defendants and Ivan Mortman to liquidate their interest in Goodman Brothers, while avoiding various obligations to Plaintiffs. (Id. ¶ 35.)

In 1997, Norman Goodman entered into a contract for sale of the Beadel Street Property. (Id. ¶ 23.) During the closing of said sale, Norman Goodman discovered that Defendants and Ivan Mortman encumbered the Beadel Street Property with thirteen liens and judgments totaling over $180,000. (Id.) Defendants fraudulently encumbered the property without authorization and incurred these liens by fraudulent use of National Drum's Tax Identification Number. (Id. ¶ 24.) Norman Goodman and Irwin Tartus incurred approximately $60,000 in legal fees to clear title and complete the sale of the Beadel Street Property. (Id. ¶ 26.)

In 2002, Goodman Brothers ceased making payments to Norman Goodman, claiming that there were no assets or ongoing business from the original entity, National Drum. (Id. ¶ 39.) Defendants concealed the formation of Goodman Containers and that company's assumption of the Goodman Brothers' goodwill and assets without any official purchase or transfer of assets or ownership. (Id. ¶ 42.)

**B. Default Judgment**

This is the second time Plaintiffs have moved for default judgment against Defendants. Previously, this Court denied the motion, noting improper service and insufficient information

pertaining to personal jurisdiction. See Goodman v. Goodman, No. 0-3869, 2009 WL 3756848 (D.N.J. Nov. 5, 2009). Plaintiffs now move with additional information relating to these issues.

Plaintiffs' attorney has certified that Plaintiffs' prior counsel served Goodman Brothers. (Till Cert ¶ 14.) Simon and Irving Goodman have also been served. (Id. ¶ 29; Docket Entry Nos. 30, 31.)

Plaintiffs further assert that Goodman Brothers "performed for, contracted with and provided services to over forty (40) businesses in the State of New Jersey." (Id. ¶ 22.; Ex. G to Till Cert.) They also state that Goodman Brothers "operated a warehouse facility located on Lister Avenue, Newark, New Jersey." (Till Cert. ¶ 23.)

Plaintiffs state that Simon and Irving Goodman were officers and majority shareholders of Goodman Brothers and "oversaw and managed the warehouse facility [in New Jersey], including, but not limited to, payment of rent, distribution of employee paychecks, withholding and review of New Jersey State Taxes, and management of the property." (Id. ¶¶ 31, 33.) Plaintiffs further assert that Simon and Irving Goodman "had repeated contact with the State of New Jersey, including various trips into and out of the State of New Jersey for business purposes; to visit and see various family members . . . and continual and repeated business with companies located in the State of New Jersey, for the Defendant Goodman Brothers Steel Drum Company, Inc." (Id. ¶ 34.)

## II. Standard of Review

A district court can enter a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), which states:

> In all other cases, the party must apply for a default judgment. A default

> judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

FED. R. CIV. P. 55(b)(2). Further, discretion to enter default judgment is left primarily to the trial court. Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

"Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint." United States v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)). Default does not establish liability for the amount of damages claimed by the plaintiff. Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

The district court has considerable latitude in determining the amount of damages. Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993). In determining the amount, the district court may conduct a hearing. FED. R. CIV. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default

judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). "It is familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 65 (1944).

## III. JURISDICTION

Before a district court can enter default judgment against a party that has not filed responsive pleadings, the court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

### A. Subject Matter Jurisdiction

This action involves a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim; therefore, this Court has jurisdiction under 18 U.S.C. § 1964(c). This Court also has supplemental jurisdiction over the state common law claims for breach of contract, breach of the covenant of good faith and fair dealing, material misrepresentation, breach of fiduciary duty, unjust enrichment, breach of contract/constructive discharge, intentional infliction of emotional distress, and negligent infliction of emotional distress.

### B. Personal Jurisdiction

A federal court first looks to the forum state's long-arm statute to determine if personal jurisdiction is permitted over an out-of-state defendant. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004). In New Jersey, the long arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United

States. Id. Therefore, in New Jersey, federal law defines the parameters of a court's in personam jurisdiction. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). Thus, this Court must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment. Miller Yacht Sales, 384 F.3d at 96.

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)). It is the burden of the plaintiff to prove that the defendant has purposefully availed itself of the forum state. Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

To prove that a defendant has purposefully availed itself of the forum state, a plaintiff may rely upon a defendant's specific contacts with the forum state. The burden to produce actual evidence of the defendant's contacts with the forum state rests on the plaintiff. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984). Personal jurisdiction pursuant to such contacts is known as specific jurisdiction. Specific jurisdiction is invoked when a claim is related to or arises out of the defendant's contacts with the forum. Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 416 (1984); Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 211 (3d Cir. 1984).

A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). What constitutes minimum contacts varies with the "quality and nature of defendant's activity." Hanson, 357 U.S.

at 253. In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum, and the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984). There must be at least "a single deliberate contact" with the forum state that relates to the cause of action. United States Golf Ass'n v. United States Amateur Golf Ass'n, 690 F. Supp. 317, 320 (D.N.J. 1988). The unilateral acts of the plaintiff, however, will not amount to minimum contacts. Helicopteros Nacionales de Colombia, 466 U.S. at 417; Hanson, 357 U.S. at 253. Assuming minimum contacts have been established, a court must inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Co., 471 U.S. at 476 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); see also Pennzoil Prod. Co. v. Colelli & Assoc. Inc., 149 F.3d 197, 201 (3d Cir. 1998).

For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. World-Wide Volkswagen Corp., 444 U.S. at 292 (1980). To determine reasonableness, a court considers the following factors: a) the burden on the defendant; b) the forum state's interest in adjudicating the dispute; c) the plaintiff's interest in obtaining convenient and effective relief; d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and e) the shared interest of the several States in furthering substantive social policies. Id. Only in "rare cases [do the] minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County, 480 U.S. 102, 116 (1987) (citing Burger King Co., 471 U.S. at 462).

If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, 466 U.S. at 416. To establish general jurisdiction, the plaintiff "must show significantly more than mere minimum contacts" with the forum state. Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive." Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982) (citing Compagnie des Bauxites de Guinea v. Ins. Co. of North America, 651 F.2d 877, 890 (3d Cir. 1981) (Gibbons, J., dissenting)).

## III. ANALYSIS

As noted earlier, this Court has previously denied Plaintiffs' motion for default judgment against Defendants, for lack of service and insufficient information regarding personal jurisdiction. Today, this Court denies Plaintiffs' current motion for default judgment against Goodman Brothers on the basis of insufficient information for personal jurisdiction, and against Simon and Irving Goodman for lack of personal jurisdiction.

### A. Goodman Brothers

Assuming that the service on Goodman Brothers is proper,[4] personal jurisdiction over the

[4] Plaintiffs' attorney has certified that the original complaint was served on Goodman Brothers by Plaintiffs' prior counsel, but does not offer any detail. Plaintiffs' attorney also certified that service of the amended complaint was effectuated by serving the officers of Goodman Brothers. On the record, there is no proof, other than these certification statements, that Goodman Brothers was served.

This is slightly disconcerting because it is unclear if the parties understand that service on an entity must be made *to the entity*, and that, while it may be effectuated by *delivering* copies to the officers, it cannot be to the officers as named in their individual capacities. For example, the service of process that was effectuated on Simon and Irving Goodman, as evidenced on the

company, even if established on the basis of its business connections and New Jersey warehouse, is complicated by the fact that Goodman Brothers is now dissolved.

> [A] private corporation in this country can exist only under the express law of the state or sovereignty by which it was created. Its dissolution puts an end to its existence, the result of which may be likened to the death of a natural person. There must be some statutory authority for the prolongation of its life, even for litigation purposes.

Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 124-25 (1937) (citing Oklahoma Nat. Gas Co. v. Oklahoma, 273 U.S. 257 (1927).

Federal Rule of Civil Procedure 17(b)(2) notes that the capacity of a corporation to sue or to be sued is determined by the laws under which it was organized. In this case, it appears that Goodman Brothers was organized in New York.[5] If this is true, New York provides that a dissolved corporation may sue or be sued in all courts, and the "dissolution of a corporation shall not affect any remedy available to or against such corporation . . . for any right or claim existing or any liability incurred before such dissolution." N.Y. BUSINESS CORPORATION LAW § 1006; see also, e.g., Cava Const. Co., Inc. v. Gealtec Remodeling Corp., 871 N.Y.S.2d 654, 655 (N.Y. App. Div. 2009) (holding trial court erred in finding plaintiff could not assert claim against dissolved defendant corporation).

---

docket, is insufficient to constitute service of process on Goodman Brothers, because both were named in their individual capacities on those summons. Service of process on an entity was one of the issues discussed in this Court's prior opinion. See Goodman, 2009 WL 3756848 *5-6.

[5] For instance, one exhibit certified as a purchase agreement in which Goodman Brothers was the purchaser, names the purchaser as "Your Printers, Inc. (hereinafter the "Purchaser"), a New York corporation, having offices at 18 Division Street, Brooklyn, New York 11222." (Till. Cert. Ex. B; Till Cert. ¶ 3.) The Brooklyn address matches the address listed for Goodman Brothers in the Complaint. (Am. Compl. ¶ 5.).

Plaintiffs should provide information pertaining to Goodman Brothers' place of incorporation, as well as its time of dissolution, particularly as it pertains to their cause of action. Plaintiffs should also clarify whether the entity has been served, or merely the officers of the entity have been served.[6]

**B. Simon and Irving Goodman**

There is an insufficient basis to provide this Court with personal jurisdiction over Simon and Irving Goodman. The extent of their contact with New Jersey is essentially in their capacities as employees for Goodman Brothers. "It is axiomatic that jurisdiction over . . . [individual] defendants does not exist simply because they are agents or employees of organizations which presumably are amendable to jurisdiction." MoneyGram Payment Systems, Inc. v. Consorcio Oriental, S.A., 65 F. App'x 844, 850 (3d Cir. 2003) (internal quotation and citation omitted). In MoneyGram, the Third Circuit rejected the notion that two officers of a company were subject to jurisdiction in New Jersey because they conducted business in and traveled to New Jersey on behalf of the corporation:

> [T]he 'business' that MoneyGram seeks to attribute to [defendant] was opening [the company]'s bank account. . . . [T]he 'business' that forms the basis of [MoneyGram's] claims is the business of the Dominican corporation. It is not the business of the individual officers and shareholders who are Dominican citizens with no identified contact with New Jersey other than in their capacity as corporate agents. . . . MoneyGram's attempt to ensnare [defendants] in a jurisdictional web by reciting [the company's] contacts with New Jersey both

---

[6] It appears that, should Goodman Brothers be able to be sued, the company may have sufficient contacts to establish general jurisdiction over the company. As noted, the company operates a warehouse in New Jersey and conducts business with numerous companies in this state. Cf. Fisher v. Teva PFC SRL, 212 F. App'x 72, 75-76 (3d Cir. 2006) (finding no general jurisdiction where defendant "did not maintain an office, employees, bank account, warehouse, or telephone listing in New Jersey.") Nonetheless, this need not be decided at this time.

ignores and obfuscates [the company's] separate legal identity.

Id. at 850.

Likewise, Simon and Irving Goodman have not been identified as having continuous and systematic contacts with New Jersey.[7] Unidentified "family visits" and limited business conducted on behalf of an employer does not establish this Court's personal jurisdiction over these defendants.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs have failed to establish that this Court has personal jurisdiction over Irving Goodman, Simon Goodman, and Goodman Brothers. This Court denies Plaintiffs' motion for default judgment (Docket No. 39), without prejudice.

S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.C.J.
(Sitting by designation on the District Court)

Date: March 5, 2010

---

[7] Presumably, there is only a possibility of general jurisdiction over these defendants. None of the information provided suggests that this action arises from defendants' contacts with the forum.